Ali Parvaneh, SBN 218320
Jenos Firouznam-Heidari SBN 266257
Ashley Boekamp, SBN 275616
**MADISON HARBOR, ALC**
17702 Mitchell North
Irvine, CA 92614
Tel: (949) 756-9050
Fax: (949) 756-9060

Attorneys for Plaintiff Southwest Paper Company, LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORINIA
## WESTERN DIVISION – UNITED STATES COURTHOUSE

| | |
|---|---|
| SOUTHWEST PAPER COMPANY, LLC, a California limited liability company,<br><br>Plaintiff;<br><br>HANSOL PAPER, a foreign corporation; 8 NET, INC., a California corporation; GLOBAL FIBRES INC.; a California corporation; and Does 1 to 10 inclusive,<br><br>Defendants. | Case No.: CV12- 08721 CAS (RZx)<br><br>Assigned to:<br>Hon.<br>Dept.<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATION OF 15 U.S.C. § 13(a) PRICE DISCRIMINATION**<br>2. **VIOLATION OF 15 U.S.C. § 13(f) KNOWINGLY INDUCING OR RECEIVING DISCRIMINATORY PRICE**<br>3. **VIOLATION OF 15 U.S.C. § 1114** *et seq.* **TRADEMARK INFRINGEMENT**<br>4. **VIOLATION OF 15 U.S.C. § 1125** *et seq.* **TRADE DRESS INFRINGEMENT**<br><br>[Jury Trial Demanded] |

COMES NOW THE Plaintiff Southwest Paper Company, LLC, a California limited liability company (hereinafter referred to as "Plaintiff"), in its Complaint against Defendant Hansol Paper, a foreign corporation (hereinafter referred to as "Hansol"), Defendant 8 NeT, Inc., a California corporation (hereinafter referred to as "8 NeT"), Defendant Global Fibres, Inc., a California corporation

(hereinafter referred to as "Global"); and Does 1 to100 (collectively hereinafter "Defendants"), and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

### Plaintiff

1. Plaintiff is a limited liability company organized and existing under the laws of the State of California, having its principal place of business in the city of Bell, California, and doing business within this judicial district.

### Defendants

2. Plaintiff is informed and believes, and thereupon alleges that Hansol is a foreign corporation with its United States headquarters and principal place of business located in the City of Fort Lee, State of New Jersey. Plaintiff is informed and believes and thereupon alleges that Hansol is doing business within this judicial district and selling the accused goods within this judicial district.

3. Plaintiff is informed and believes, and thereupon alleges that Global is a California corporation, with its principle place of business located in the City of Cerritos, State of California. Plaintiff is informed and believes and thereupon alleges that Global is doing business within this judicial district and selling the accused goods within this judicial district.

4. Plaintiff is informed and believes and thereupon alleges that Hansol wholly owns and does business as Global, and that Global is an alter ego of Hansol. Plaintiff is informed and believes and thereupon alleges, that at all times herein mentioned, there existed a unity of interest and ownership between Hansol and Global, such that any individuality and separateness between these defendants has ceased; Global was conceived, intended, and/or used by Hansol as a devise for Hansol to avoid liability; Hansol and Global comingled funds and other assets; Hansol treated Global's assets as its own, held itself out to be liable for the debts of Global, and used Global to distribute goods and merchandise to other persons or entities; Global is, and at all times herein mentioned was, controlled dominated and operated by Hansol and the two share and/or exchange officers, directors, and employees. (As such, Hansol and Global will hereinafter sometimes be referred to as "Hansol/Global") Failure to treat Hansol and Global as one and the same would sanction fraud and promote injustice.

5. Plaintiff is informed and believes and thereupon alleges that Hansol is in a joint venture relationship with Global, that the two share a joint interest in a common business, namely, distribution of commodity coated papers and other products, that the two have an understanding to share the profits and losses of this business, and that the two jointly control this business.

6. Plaintiff is informed and believes and thereupon alleges that 8 NeT is a California corporation with its principal place of business located in the City of Cerritos, State of California. Plaintiff is informed and believes and thereupon alleges that 8 NeT is doing business within this judicial district and buying/selling the accused goods within this judicial district.

7. The true names or capacities of all Defendants Does 1 to 100 are unknown to Plaintiff who sues them by such fictitious names under *Cal. Code Civ. Proc.* § 474. Each Defendant Doe caused Plaintiff injury and damage. Plaintiff will amend the Complaint to allege the true names and capacities of Defendants, whether individual, corporate, associate or otherwise, when the same have been ascertained. Plaintiff is informed and believes and based on that information and belief alleges that each fictitiously named Defendant is in some manner responsible for the damages alleged.

8. Plaintiff is informed and believes and thereupon alleges that Defendants and each of them are agents, partners, joint venturers, and employees of each other at all times mentioned herein and have acted in the course and scope of such agency, partnership, or employment.

9. Pursuant to 28 U.S.C. § 1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Jurisdiction over antitrust claims is given to the federal district courts pursuant to 28 U.S.C. § 1337(a), whereby the district courts shall have original jurisdiction of any civil act or proceeding arising out of any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. Pursuant to 15 U.S.C. § 1221, the district courts shall have original jurisdiction of all actions arising under the Lanham, or Trademark, Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

10. Plaintiff is informed and believes, and thereupon alleges that the above-entitled Court is the proper Court for this action.

11. All paragraphs are incorporated by reference in all other paragraphs herein.

## DEFINITIONS

12. "Commodity coated paper" shall mean white papers made from wood fibers and coated with clay coating surfaces so as to increase ink holdout, reduce dot-gain, and provide for accurate surfaces for reproduction of images. These types of papers are commonly used in magazines, posters, calendars, advertising and promotional material, and as a medium for reproduction of any image/photograph. Coated papers are primarily available in premium, also known as No. 1 coated papers, or commodity coated papers, also referred to as No. 3 coated papers. The distinguishing factors in coated papers are their brightness, also referred to as whiteness, the smoothness of the coated surfaces, the gloss factor of the coated surfaces, and their opacity. Simply stated, the difference between premium coated papers and commodity coated papers is reflected in the aforementioned qualities of the papers. The higher these qualities, the higher the grade of paper.

13. "Sole-sourced" shall mean a distributor of printing papers, such as the aforementioned coated papers, who has one primary supplier/manufacturer as its vendor. A sole-sourced distributor becomes inherently dependent upon fair, equitable, and ethical conduct by its vendor. Plaintiff is a sole-sourced distributor of commodity coated papers.

14. "Relevant market" shall mean the geographical territory within which a product is marketed and sold. Herein, the relevant market consists of the Southwestern United States, specifically California, Nevada, and Arizona.

## BACKGROUND OF PAPER INDUSTRY

15. The paper industry is the largest segment of the forest products industry. The forest products industry has long been known as the second largest industry in the United States, generating more annual revenues than all but the oil industry. The affairs of the paper industry cause material effects upon the economy of the United States. Commodity papers, such as commodity coated papers, cause a heightened effect upon the economy of the United States because nearly all businesses rely upon these papers as a tool in conducting their daily activities. Inasmuch as the United States offers the highest per capita consumption of papers in the world, the economy of this nation heavily depends upon fair, equitable, and ethical conduct by the manufacturers and distributors of papers. Accordingly, this

Complaint addresses fundamental concerns facing the economy and commerce in this country. Public policy necessitates prompt and thorough review of the misconduct addressed herein, and the issuance of orders and judgment by this Court to preclude Defendants from causing further damage in a pivotal segment of the economy.

## GENERAL ALLEGATIONS

16. From about 2007 to about May of 2012, Plaintiff purchased commodity coated papers from Hansol/Global. Plaintiff purchases commodity coated papers on an approximate monthly basis and is a sole-sourced distributor of Hansol paper products. Plaintiff has promoted the name Hansol, and the products made by Hansol, throughout its relationship with Hansol/Global. Indeed, when Plaintiff started its relationship with Hansol, neither Hansol nor Global was enjoying a material market share within the Southwestern United States. Hence, Hansol/Global, through their officers, employees, and agents, such as Jean Pak, made promises of reliability and accountability to Plaintiff, thus causing Plaintiff to engage in the marketing and distribution of Hansol-manufactured commodity coated papers. These promises included promises of extended credit terms, consignment inventory allocations, reliable quality and delivery schedules, reliable pricing policies, etc.

17. Hansol manufactures its commodity coated paper in its home country of South Korea and is a major manufacturer of commodity coated papers in that nation. It owns multiple manufacturing sites/mills throughout South Korea. However, it manufactures its commodity coated papers to the same specification at each mill. By way of example, Hansol's commodity coated papers could be compared to products such as Coca Cola. Although the manufacturer owns and operates various bottling plants throughout the country, the finished product is made to the same specifications and consistency.

18. On information and belief, Hansol also sells commodity coated papers to Plaintiff's competitors, including, but not limited to 8 NeT. Other distributors who have purchased Hansol papers are located in various states throughout the United States. These products are sold on both coasts and in multiple central states.

19. From 2009 to 2010, Plaintiff's sales increased by approximately 81%, from $3.3 million to $5.9 million. This was the result of tireless marketing and sales activities in 2007 and 2008. The

market became more familiar and comfortable with Hansol papers, and the result showed in increased sales volumes.

20. On information and belief, in or about 2010, Hansol began selling commodity coated papers to Plaintiff's competitors, including 8 NeT, at a substantially lower price than what Hansol/Global was charging Plaintiff. In a market where average markups range between 12-16%, Hansol/Global were charging 8 NeT about 15% less for the same commodity coated papers sold to Plaintiff. This difference results in a material advantage to 8 NeT, and a material disadvantage to Plaintiff.

21. In or about 2010, Hansol was charging Plaintiff a higher price for commodity coated papers, than Hansol had charged Plaintiff in the past. Additionally, on information and belief, Hansol was charging Plaintiff's competitors a lessor price for the same commodity coated papers. The increased price and price variance was not supported by the market and it resulted in a severe disadvantage to Plaintiff.

22. From 2010 to 2011, Plaintiff's sales dropped sharply. Plaintiff, who was sustaining well over 50% annual sales growth, could not maintain its growing market share.

23. The reducing trend continued. From 2011 to 2012, Plaintiff's sales of commodity coated papers decreased. Accordingly, Plaintiff suffered losses as a result of the competition created by Hansol/Global.

24. Plaintiff sells commodity coated papers in the relevant market for a markup of about 15%. Plaintiff buys these commodity coated papers at a price of about $49.00 per hundredweight

25. 8 NeT sells commodity coated paper in the relevant market for approximately $49.00 per hundredweight. Accordingly, 8 NeT is buying paper from Hansol/Global at a price that is about 15 percent lower than Plaintiff's buying price.

26. Plaintiff cannot match 8 NeT's price for commodity coated papers without selling at a loss. Defendants have manipulated the market, created an unfair disadvantage for Plaintiff, and embarked upon bankrupting a legitimate distributor of commodity coated papers. If Defendants succeed in their mission, the market will suffer the loss of a commodity distributor. As a result, prices will increase and end-users will be forced to pay more for their products.

27. Each and every paragraph herein shall be incorporated into each and every cause of action below as if fully restated therein.

### FIRST CAUSE OF ACTION

#### (Violation of 15 U.S.C. § 13(a) - Price Discrimination)

(Against Defendants Hansol, Global, and Does 1 to 100)

28. Plaintiff incorporates Paragraphs 1 through 27 in this cause of action as though they were fully stated within.

29. 15 U.S.C. § 13(a) sets forth in relevant part:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States…, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them…"

30. From about 2007 to about May of 2012, Hansol/Global sold commodity coated papers to Plaintiff. From about 2007 to about May of 2012, there have been far more than two consummated sales of commodity coated paper by Hansol/Global to Plaintiff. Hansol executed these transactions by either selling directly to Plaintiff, or by issuing an invoice through its wholly-owned subsidiary, Global.

31. Indeed, there have been dozens of transactions between Plaintiff and Hansol/Global, as Plaintiff bought these papers from Hansol/Global on about a monthly basis.

32. On information and belief, Hansol/Global also sold and sells commodity coated papers to 8 NeT. On information and belief, Hansol/Global also sold and sells commodity coated papers to other distributors in the relevant market, which includes California, Nevada, and Arizona. On information and belief, there have been far more than two consummated sales between Hansol/Global and other distributors, including 8 NeT.

33. Hansol/Global sells commodity coated papers to Plaintiff at about $49.00 per hundredweight. On information and belief, Hansol/Global sells commodity coated papers of like grade and quality to 8 NeT at a price that is about 10 to 15 percent lower than Plaintiff's price.

34. Plaintiff resells the paper within various markets throughout the United States, including the relevant market. 8 NeT resells the paper within various markets in the United States, including the relevant market.

35. Hansol is headquartered in New Jersey. Global is headquartered in Cerritos, California. Hansol's goods are manufactured in South Korea and either sold directly, or through Global, to the market, including the relevant market.

36. Plaintiff and 8 NeT directly compete with each other to supply the same business accounts, and potential business accounts, with commodity coated papers within the relevant market. On information and belief, Plaintiff has lost existing business accounts to 8 NeT because Hansol sells commodity coated papers to Plaintiff at a higher price than Hansol charges to 8 NeT. Plaintiff has lost existing business accounts to other competitors, including multiple printers and users of such commodity coated papers of like grade and quality, because Hansol/Global sells these papers to Plaintiff at a higher price than Hansol/Global charges Plaintiff's competitors.

37. The aforementioned conduct violates 15 U.S.C. § 13(a). As a direct and proximate result of Hansol/Global's aforementioned price discrimination practices, Plaintiff has been so severely injured that it cannot compete in the relevant market; thus, Plaintiff has been damaged, in this judicial district, in an amount that shall be proven at the time of trial.

## SECOND CAUSE OF ACTION

**(Violation of 15 U.S.C. § 13(f) – Knowingly Inducing or Receiving Discriminatory Price)**

(Against Defendant 8 NeT and Does 1 to 100)

38. Plaintiff incorporates Paragraphs 1 through 37 in this cause of action as though they were fully stated within.

39. 15 U.S.C. § 13(f) sets forth in relevant part: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."

40. On information and belief, from about 2010, to present, 8 NeT has purchased commodity coated papers from Hansol/Global.

41. On information and belief, from about 2010, to present, 8 NeT has purchased commodity coated papers at a lower price than Hansol/Global has charged Plaintiff for commodity coated papers of like grade and quality. Additionally, on information and belief, 8 NeT is, and has been, aware of this fact, has specifically negotiated for this outcome, and continues to profit from the aforementioned misconduct.

42. 8 NeT has gained business accounts, in the relevant market, previously held by Plaintiff, because 8 NeT sells commodity coated papers to its accounts at a lower price than Plaintiff is and was able to sell commodity coated papers of like grade and quality.

43. 8 NeT knew or should have known that it was buying commodity coated papers from Hansol at a lower price than the price charged to Plaintiff by Hansol/Global.

44. 8 NeT knew or should have known that the difference in the price it was charged by Hansol/Global and the price Hansol/Global charged to Plaintiff for commodity coated papers of like grade and quality was discriminatory, unlawful, and would injure, destroy, or prevent competition between it and Plaintiff.

45. The aforementioned conduct violates 15 U.S.C. § 13(f). As a direct and proximate result of 8 NeT's conduct of knowingly inducing or receiving a discriminatory price, Plaintiff has been so severely injured that it cannot compete in the relevant market; thus, Plaintiff has been damaged, in this judicial district, in an amount that shall be proven at the time of trial.

///
///
///
///

## THIRD CAUSE OF ACTION

### (Violation of 15 U.S.C § 1114 *et seq.* – Trademark Infringement)

(Against Defendants Hansol and Global)

46. Plaintiff incorporates Paragraphs 1 through 45 in this cause of action as though they were fully stated within.

47. 15 U.S.C. § 1114 sets forth in relevant part:

Any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

48. Plaintiff owns the valid and protectable trademark, "Malibu Gloss," which it uses to label and sell its paper products. "Malibu Gloss" is a federally registered trademark, designated by serial number 77190169. The "Malibu Gloss" trademark is filed in the category of Paper Goods and Printed Material, specifically, printing papers.

49. In or about May of 2012, as a result of Hansol/Global's demand to Plaintiff to return its inventory of commodity coated papers previously purchased by Plaintiff from Hansol/Global for approximately $380,000.00, Plaintiff returned said inventory, which bore Plaintiff's "Malibu Gloss" trademark. Subsequently, in or about May of 2012, Hansol/Global re-sold this trademarked paper to other distributors.

50. This use of the "Malibu Gloss" trademark by Hansol/Global was without the consent of Plaintiff and is likely to cause confusion or mistake among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

51. At all times mentioned herein, Hansol/Global knew that it was re-selling paper that bore Plaintiff's trademark, "Malibu Gloss."

52. Hansol/Global's improper usage of Plaintiff's "Malibu Gloss" trademark has caused and is likely to continue to cause injury to Plaintiff's reputation, goodwill, and profits, among others.

53. As a result of Hansol/Global's conduct, Plaintiff has been damaged in an amount to be proven at the time of trial, and any profits that Hansol/Global has earned by way of their use of Plaintiff's trademark should be disgorged and returned to Plaintiff.

## FOURTH CAUSE OF ACTION

### (Violation of 15 U.S.C § 1125 *et seq.* – Trade Dress Infringement)

(Against Defendants Hansol and Global)

54. Plaintiff incorporates Paragraphs 1 through 53 in this cause of action as though they were fully stated within.

55. 15 U.S.C. § 1125 sets forth in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...

56. Plaintiff owns the valid and protectable trademark "Malibu Gloss," which it uses to sell its paper products. "Malibu Gloss" is a federally registered trademark, designated by serial number 77190169. The "Malibu Gloss" trademark is filed in the category of Paper Goods and Printed Material, specifically, printing papers.

57. In or about May of 2012, as a result of Hansol/Global's demand to Plaintiff to return its inventory of commodity coated papers previously purchased by Plaintiff from Hansol/Global for approximately $380,000.00, Plaintiff returned said inventory, which bore Plaintiff's "Malibu Gloss" trademark. Subsequently, in or about May of 2012, Hansol/Global re-sold this trademarked paper to other distributors.

58. This use of the "Malibu Gloss" trademark by Hansol/Global was without the consent of Plaintiff and is likely to cause confusion or mistake among consumers as to the affiliation, connection, origin, association, or approval of the goods.

59. At all times mentioned herein, Hansol/Global knew that it was re-selling paper that bore Plaintiff's trademark, "Malibu Gloss."

60. Hansol/Global's improper usage of Plaintiff's "Malibu Gloss" trademark has caused and is likely to continue to cause injury to Plaintiff's reputation, goodwill, and profits, among others.

61. As a result of Hansol/Global's conduct, Plaintiff has been damaged in an amount to be proven at the time of trial, and any profits that Hansol/Global earned by way of Plaintiff's trademark should be disgorged and returned to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment on the First through Fourth causes of action as follows:

1. That this Court award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of further injury to Plaintiff during the pendency of this action;
2. That this Court enter a permanent injunction to prevent future violations of 15 U.S.C. § 13(a); 15 U.S.C. § 13(f); 15 U.S.C. § 1114 et seq.; and 15 U.S.C. § 1125 et seq.
3. That any profits earned by Hansol/Global's improper usage of Plaintiff's "Malibu Gloss" trademark be disgorged and turned over to Plaintiff;
4. For actual damages according to proof;
5. For treble damages;
6. For costs of suit incurred herein;
7. For those costs, fees, and expenses incurred in bringing this action;
8. For attorneys' fees according to proof; and
9. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 8th day of October, 2012, by: MADISON HARBOR, ALC

Ali Parvaneh, Attorney for Plaintiff
Southwest Paper Company, LLC